UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-cv-00048-TBR

MASSACHUSETTS BAY INSURANCE
COMPANY,                                                                          PLAINTIFF

v.

PREFERRED SAFETY, LLC, et al.                                        DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court upon Massachusetts Bay Insurance Company's ("MBIC") Motion for Partial Summary Judgment on its Complaint against Preferred Safety ("Preferred"). [DN 41.] Defendants White & Associates Insurance Agency, Inc., White & Associates Insurance Wimberly Agency, LLC and John Dyer (collectively, "White Agency Defendants") have responded. [DN 44.] Preferred has also responded. [DN 45.] MBIC has replied to both briefs. [DNs 48 and 49.] As such, this matter is ripe for adjudication. For the reasons that follow, MBIC's Motion for Partial Summary Judgment on its Complaint against Preferred [DN 41] is **GRANTED**.

## I.        Background

MBIC issued a Businessowners Policy, No. OD5-D416536-00 ("2017 Policy"), to Preferred for the period of November 13, 2017 to November 13, 2018. [DN 1 ¶ 31.]  As of September 12, 2018, the policy was amended to include a Commercial Umbrella Policy for the period of September 12, 2018 to November 13, 2018. [*Id.* at ¶32.]  MBIC subsequently issued Businessowners Policy No. OD5-D416536-01 to Preferred for the period of November 13, 2018 to November 13, 2019 ("2018 Policy"). [*Id.* at ¶33.]  MBIC filed this action seeking declaration that it owes no duty to defend or indemnify Preferred for the underlying suit against it. [DN 1.]

Preferred filed a Counterclaim against MBIC alleging it was vicariously liable for: negligence, negligent misrepresentation, fraudulent misrepresentation and inducement, equitable estoppel and promissory estoppel. [DN 20.] Preferred went on to file a Third-Party Complaint against the White Agency defendants alleging the same cause of action.

In the Fourth Amended Complaint of the underlying action, Collin Sallee stated he was an employee of Midwest Steel, Inc. [DN 44-1 at PageID 837.] Sallee alleges Preferred was hired "as a safety consultant for the structural steel work, including on-site steel erection." [*Id.* at PageID 838.] On June 13, 2018, while working on a structural steel beam performing a double connection, the beam allegedly collapsed and caused Sallee to fall "approximately 40 feet to the ground, resulting in serious and permanent injuries". [*Id.* at PageID 839.]

Sallee alleges "Preferred and its agents had a duty to exercise reasonable care in the observation of the construction, and in advising the contractors and subcontractors regarding safety of the work". [*Id.* at PageID 842.] Sallee goes on to allege Preferred had control over the safety of the work and the employees of subcontractors. [*Id.*] The Complaint alleges Preferred was negligent in one or more of the following wrongful acts:

a. Carelessly and negligently designed and/or approved double connection erection plans without vertical stabilizer plates;

b. Carelessly and negligently designed and/or approved steel erection plans of double connections without providing bracing for the subject beam spanning the two adjacent columns so as to prevent the beam from falling during the double connection process;

c. Carelessly and negligently failed to advise contractors, subcontractors, owners and employees of the need for wind bracing in the area where plaintiff was injured;

d. Carelessly and negligently failed to advise the employer and prime contractor of the danger to plaintiff of a double connection at a column without requiring at least one bolt with a wrench tight nut to remain connected at all times to prevent the connecting member from being displaced from the column;

2

    e.  Failed to advise the contractor, subcontractor, and employees, to require a seat or equivalent device to support the steel member during the double connection process;

    f.  Failed to advise and/or require the steel fabricator to include a seat under the beam to specifically prevent it from falling during the double connection process.

    g.  Failed to advise and/or train the plaintiff regarding the specific safety precautions to be taken during the double connection being made in the area of his fall.

    h.  Failed to advise plaintiff, the contractor, subcontractor and employees of the need for a man lift to support plaintiff during the double connection.

    i.  Failure to advise the contractor, subcontractor and others of the need to provide a critical lift plan for the double connection process.

    j.   Failed to advise of the need to provide an adequate prime/sub steel erection plan.

[*Id.* at 843.] Here, MBIC filed its motion for partial summary judgment only on its complaint against Preferred alleging coverage is excluded for the injuries that allegedly occurred in the underlying suit.

## II.      Legal Standard

      Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

      "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment.

### III.    Discussion

First, the Court will address MBIC's argument that the White Agency Defendants lack standing to oppose this motion. In support, MBIC cites several district court cases holding co-defendants lack standing to oppose a motion for summary judgment filed by a co-party. This is an issue that has not been decided in this circuit.

"The Federal Rules of Civil Procedure permit an adverse party to submit his or her opposition to a motion for summary judgment. Fed.R.Civ.P. 56(c). Some courts have held defendants who do not file cross claims against each other, are not adverse parties who are entitled to object to each other's motions for summary judgment. *Fraioli v. Lemcke*, 328 F. Supp. 2d 250, 263 n.4 (D.R.I. 2004). Courts that have held co-defendants who have not filed cross claims may not object to a motion for summary judgment rely on the definition of adverse parties and being on opposite sides of the "v.". However, there is limited case law in this circuit that rejects that argument.

In *Stone v. Marten Transport, LLC,* 2014 WL 1666420 *4 (M.D. Tenn. Apr. 25, 2014), the Court stated, "[a]lthough some courts seem to hold that "standing" to oppose a motion requires that parties be on opposite sides of the "v.", that approach is unnecessarily myopic." That case involved comparative fault and the Court found the co-defendant "[had] a dog in this fight" and had a right to challenge the motion. *Id.* Here, although it is not a comparative fault case, the Court finds the White Agency Defendants do have an interest in the outcome of this motion. Preferred's

4

Third Party Complaint against the White Agency Defendants will necessarily be impacted by the holding of this Court. Therefore, the Court finds the White Agency Defendants do have standing.

## A.  Professional Services Exclusion in 2017 Policy

MBIC first argues the professional services exclusion in the Primary policy precludes coverage for the alleged injuries suffered in the underlying suit. Both Preferred and the White Agency Defendants argue the term "professional services" is ambiguous and must be construed in favor of coverage.

The Professional Service Exclusion states in relevant part:

(j) Professional Services
   "Bodily injury. . . caused by the rendering of or a failure to render any professional
   Service, advise or instruction:
    (1) By you;
    (2) On your behalf;

regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Professional services include but are not limited to:

   (5)   Preparing, approving, or failing to prepare or approve maps, drawings, opinions,
         reports, surveys, change orders, designs or specifications;
   (6)   Supervisory, inspection or engineering services;
   (13)  Management, Human Resource, Testing, Media or Public Relations consulting
         services.

[DN 41-1 at PageID 711-712.] MBIC relies on *Ratliff v. Employers' Liability Assur. Corp., Ltd.,* 515 S.W.2d 225 (Ky. Ct. App. 1974) and *Orchard, Hiltz & McCliment, Inc. v. Ins. Co.,* 676 F. App'x 515 (6th Cir. 2017) to support its argument.

In *Ratliff,* the insurance policy in question provided an exclusion of malpractice and professional services' provision that stated in relevant part:

"It is agreed that as respects any classification stated above or designated in the policy as subject to this endorsement, the policy does not apply to injury, sickness, disease, death or destruction due to

> 1. The rendering of or failure to render
> (a) medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;"

*Id.* at 226. Ratliff, who suffered from alcoholism and was hospitalized, was administered medication and allowed to walk from the nurse's station back to his bed without any assistance. *Id.* at 227. On his way back to the bed, Ratliff fell and broke his leg. *Id.* Ratliff filed suit against the hospital alleging the staff was negligent in allowing him to walk back to his room unassisted. *Id.* at 226. The hospital did not have the ability to pay the judgment against it, so Ratliff filed suit against the insurance company. *Id.* In determining whether coverage for this incident was excluded, the Court considered whether the specific act involved "any professional training or experience." *Id.* at 229. The Court found, "[d]etermining whether Ratliff was capable of returning safely from the nurses' station to his bed required the nurses to exercise their expert professional ability. Any negligence on the part of the hospital in deciding that Ratliff could return to bed unassisted was clearly a failure to render professional care." *Id.* at 230. The Ratliff Court, and other courts before it, have looked to the specific act in question rather than the title of the profession when determining whether professional services were excluded. *Id.*

In *Orchard,* Orchard was an engineering and architecture firm hired by the Village of Dexter, Michigan "to oversee upgrades to its wastewater treatment plant's sludge-handling system." *Orchard,* 676 Fed. App'x at 516. Orchard agreed to "prepare all contract and design documents for the project including all architectural, structural, process, plumbing, heating and ventilation, electrical and instrumentation drawings and technical specifications for the general contractor". *Id.* Orchard "also agreed to conduct a quality assurance and control review of all drawings and specifications." *Id.* Orchard's insurance policy with Phoenix contained a provision that stated:

"Excluded from this endorsement, however, is coverage for bodily injury, personal injury, or property damage:

arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

    i.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or the preparing, approving, or failing to prepare or approve, drawing and specifications; and

    ii.    Supervisory, inspection, architectural or engineering activities."

*Id.* at 516-517. One worker was injured, and one was killed at the scene of the project and suit was filed regarding the incident. *Id.* at 517. The Court found Orchard's actions were excluded from coverage because Orchard was hired "to oversee all aspects of Dexter's treatment plant improvement project; it designed the plans for every facet of the project, monitored their implementation, served as an on-site consultant, and supervised the work to ensure compliance with those plans and timely progress." *Id.* at 522. The Court further stated, "[t]hese acts are predominantly intellectual in nature, and both insurance policies exclude coverage for liability arising out of an engineer's or architect's failure to prepare or approve drawings and specifications, other supervisory, inspection, architectural or engineering activities". *Id.* (internal quotations omitted).

Here, MBIC has not defined "professional services" in the insurance agreement. The White Agency Defendants and Preferred both argue "professional services" is ambiguous and the definition provided in Kentucky Revised Statute § 413.243 should apply here. That statute states, "as used in KRS 413.245, professional services means any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky". Ky. Rev. Stat. § 413.243. KRS §413.245 governs statute of limitations for malpractice actions. Preferred cites to several cases that use KRS § 413.243 to define professional services.

7

However, those cases all deal with the definition of professional services with regards to statute of limitations.

"Kentucky courts have recognized that the term "professional services" is properly defined as requiring an exercise of judgment or training." *Dibeneditto v. Med. Protective Co*., 3 F. App'x 483, 486 (6th Cir. 2001); *Ensey on Behalf of D.E. v. Shelter Gen. Ins. Co*., No. 3:17-CV-642-RGJ, 2020 WL 807530, at *3, n. 4 (W.D. Ky. Feb. 18, 2020). Preferred states its job was limited to "looking at a written list of Toyota's plant safety rules, watching Midwest Steel on an as needed to see if Midwest Steel violated any of those plant safety rules, and then dealing with minor violations or reporting others." [DN 45 at PageID 877.] Preferred also states MBIC knew James Hresko, the safety consultant provided by Preferred to Midwest Steel, had no higher education degrees and was not licensed or certified. [*Id.* at PageID 870.] However, the Complaint in the underlying suit alleges Preferred played a much more expansive role in the project.

"To the extent this means that the insureds deny they undertook any of the actions alleged in the complaint, the insureds' denials are not "facts" known to the insurer." *Outdoor Venture Corp. v. Phila. Indem. Ins. Co*., 2018 U.S. Dist. LEXIS 167986, *48 (E.D. Ky. Sept. 27, 2018). Most of Preferred's statement of "facts known" are simply denials of what Sallee alleges in the underlying suit. "Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy." *Id.* at 7. (quoting *Westfield Ins. Co. v. Tech Dry, Inc*., 336 F.3d 503, 507 (6th Cir.2003). Based on the underlying complaint, Preferred allegedly approved designs and played a supervisory role on the site. As such, these specific acts are excluded from coverage under the professional services exclusion.

Preferred argues MBIC's reliance on *Ratliff* and *Orchard* is misplaced because they both had exclusions that explicitly stated medical and engineering services were precluded. However, this ignores the fact the Court in both cases looked at the specific act that allegedly caused injury and not the job title. The specific act the nurse was engaged in when Ratliff was injured was one that required medical judgment. In its decision, the Court cited to *D'Antoni v. Sara Mayo Hospital, La.,* 144 So. 2d 643. In *D'Antoni,* a physician ordered side rails be placed on the patient's bed. A nurse failed to place the rails and the patient subsequently fell and was injured. The Court found even though the nurse was a medical professional, her specific failure to place the rails was not excluded by a professional services exclusion.

> "While the initial decision to attach the side rails may have involved professional judgment, once the physician had issued the order the professional aspect of the matter was complete. The placing and maintaining of the side rails could have been performed by anyone, without any professional training."

*Ratliff*, 515 S.W.2d at 228. Here, when looking at the specific acts Sallee alleges Preferred took, they fall under the professional services exclusion.

The White Agency Defendants further argue the exclusion is ambiguous because the Umbrella policy and the Primary policy list different professions or acts as excluded professional services. Simply because different services are listed under the different policies does not make the term "professional services" ambiguous. MBIC is permitted to exclude some services under one policy and cover them in another.

## B. Doctrine of Reasonable Expectations

Preferred and the White Agency defendants both argue the Doctrine of Reasonable Expectations should apply due to "professional services" being ambiguous. MBIC argues the doctrine does not apply because the policy language is not ambiguous. This doctrine "resolves an insurance-policy ambiguity in favor of the insured's reasonable expectation". *True v. Raines*, 99

9

S.W.3d 439, 443 (Ky. 2003), as amended (Apr. 2, 2003). "Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted "in favor of the insured's reasonable expectations." *Id.* "However, "[t]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity". *Id.*

Where a term is not defined, it is given its ordinary meaning if the meaning is not ambiguous. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 72 (Ky. 2010), as corrected (July 19, 2011). As previously stated, Kentucky courts have defined "professional services" as "requiring an exercise of judgment or training." *Dibeneditto,* 3 F. App'x at 486. Although Preferred denies engaging in the alleged acts, Sallee alleges Preferred negligently approved or designed certain plans and failed to advise or train the subcontractor, contractor, or employees on the proper safety precautions. These alleged acts unambiguously fall into the excluded services. Therefore, the reasonable expectations doctrine cannot apply.

## C.  Coverage under 2018 Miscellaneous Professional Liability Endorsement

MBIC argues the Bodily Injury exclusion in the Miscellaneous Professional Liability (MPL) Endorsement precludes coverage. Preferred argues construing the Bodily Injury exclusion to exclude coverage renders coverage under the MPL Endorsement illusory.

The MPL Endorsement states:

"We will pay those sums the insured becomes legally obligated to pay as "damages" and "claim expense" arising out of a "wrongful act" in the rendering of or failure to render a covered professional service identified in **Item 1**. of the Schedule above."

[DN 41-1 at PageID742.] Item 1 states the covered professional services are "[s]olely in your performance as a management/business consultant for others for a fee". [*Id.*] The policy goes on

to state that "[t]his insurance does not apply to: "bodily injury" or "property damage". [*Id.* at PageID 744.]

In Kentucky, the doctrine of illusory coverage may invalidate an insurance policy exclusion if it is "so broadly drawn as to obfuscate its purpose." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Papa John's Int'l, Inc.*, 29 F. Supp. 3d 961, 969 (W.D. Ky. 2014) (quoting *Chaffin v. Kentucky Farm Bureau Ins. Companies*, 789 S.W.2d 754, 757 (Ky.1990)). "Illusory coverage is coverage that is at least implicitly given under its provisions and then taken away, whether by virtue of a prohibition or exclusion contained in the same policy, or by virtue of a strict legal definition[.]" *Robinson v. Monroe Guarantee Ins. Co.,* No. 2016-CA-001667-MR, 2019 WL 3050522, *5 (Ky. Ct. App. July 12, 2019), review granted (Mar. 18, 2020) (internal quotations omitted). "The illusory coverage doctrine is best applied ... where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* (internal quotations omitted). "Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision." *Gower v. Alfa Vision Ins. Corp.*, 2016 LEXIS 772, *6-7 (Ky. Ct. App. Nov. 18, 2016) (citing *Sparks v. Trustguard Ins. Co.,* 389 S.W.3d 121, 128-129 (Ky. App. 2012).

The underlying suit clearly alleges bodily injury. Sallee alleges the actions of Preferred resulted in serious and permanent injuries. Under the MPL Endorsement claims for bodily injury are excluded and therefore, MBIC would have no duty to defend or indemnify Preferred. However, the issue is whether this makes coverage under this Endorsement illusory.

The Court agrees with Preferred that the majority of its risk stems from potential bodily injury as safety consultants. MBIC argues coverage is not illusory because any economic losses caused by Preferred would be covered. Preferred argues its work as a safety consulting firm does

not result in economic damages. Although the risk of economic damages may be smaller, it is a risk that would likely be covered under the MPL Endorsement. The Court agrees with MBIC that a negligent act by Preferred could alter a construction schedule and result in economic damages. Since there are circumstances where Preferred would be covered under the MPL Endorsement, the Court cannot say coverage is illusory and MBIC's Motion for Partial Summary Judgment must be granted.

**D.  Umbrella Coverage of 2017 Policy**

MBIC also argues the Umbrella Coverage in the 2017 Policy does not provide coverage. Neither Preferred or the White Agency Defendants address this argument. The Umbrella Coverage was effective for the period beginning September 12, 2018 and ending November 13, 2018. It is undisputed that Sallee alleges he was injured on June 13, 2018. The Umbrella Coverage applies if the bodily injury occurred during the policy period. Due to the alleged injury occurring on June 13, 2018, it is not covered by this policy.

The injuries here also allegedly occurred prior to the inception of the 2018 Umbrella Coverage. The 2018 policy did not become effective until November 13, 2018. Therefore, there also is no coverage under the 2018 Umbrella policy.

MBIC goes on to argue coverage under the 2017 Umbrella policy is precluded under the Professional Services Exclusion. The Exclusion under the Umbrella policy precludes coverage for bodily injury due to the rendering or failure to render professional services. The list of Professional Services under the Umbrella Policy differs from the one under the Primary Policy. [DN 44 at PageID 830-831.] MBIC argues the list is not exhaustive and Preferred's acts are excluded whether or not it is explicitly stated. The Court will decline to rule on this issue because even if the services

Preferred rendered are not deemed professional, there still would be no coverage due to the alleged injuries occurring outside of the policy period for the 2017 Umbrella policy.

IV.    Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that MBIC's Motion for Partial Summary Judgment [DN 41] is **GRANTED**. A separate Order will be entered.

**Thomas B. Russell, Senior Judge**
**United States District Court**

July 15, 2020

cc: counsel